**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
|       Plaintiff, | ) | Civil Action No. 3:13-cv-00205-SLC |
| v. | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 24.183.51.58, | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| MALIBU MEDIA, LLC, | ) | |
|       Plaintiff, | ) | Civil Action No. 3:13-cv-00207-SLC |
| v. | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 71.13.250.95, | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| MALIBU MEDIA, LLC, | ) | |
|       Plaintiff, | ) | Civil Action No. 3:13-cv-00208-bbc |
| v. | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 71.87.100.125, | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| MALIBU MEDIA, LLC, | ) | |
|       Plaintiff, | ) | Civil Action No. 3:13-cv-00209-SLC |
| v. | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 98.125.121.178, | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| MALIBU MEDIA, LLC, | ) | |
|       Plaintiff, | ) | Civil Action No. 3:13-cv-00315-wmc |
| v. | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 24.177.123.74, | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| MALIBU MEDIA, LLC, | ) | |
|       Plaintiff, | ) | Civil Action No. 3:13-cv-00317-slc |
| v. | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 24.183.92.115, | ) | |
|       Defendant. | ) | |
| _____ | ) | |

MALIBU MEDIA, LLC, )
     Plaintiff, ) Civil Action No. 3:13-cv-00318-bbc
v. )
JOHN DOE subscriber assigned IP )
address 24.196.90.111, )
     Defendant. )
_____)

MALIBU MEDIA, LLC, )
     Plaintiff, ) Civil Action No. 3:13-cv-00319-slc
v. )
JOHN DOE subscriber assigned IP )
address 66.168.17.59, )
     Defendant. )
_____)

MALIBU MEDIA, LLC, )
     Plaintiff, ) Civil Action No. 3:13-cv-00320-slc
v. )
JOHN DOE subscriber assigned IP )
address 71.10.117.251, )
     Defendant. )
_____)

MALIBU MEDIA, LLC, )
     Plaintiff, ) Civil Action No. 3:13-cv-00321-bbc
v. )
JOHN DOE subscriber assigned IP )
address 71.90.19.244, )
     Defendant. )
_____)

MALIBU MEDIA, LLC, )
     Plaintiff, ) Civil Action No. 3:13-cv-00322-wmc
v. )
JOHN DOE subscriber assigned IP )
address 97.86.116.18, )
     Defendant. )
_____)

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................7

II.    FACTS .................................................................................................................7

    A.  BitTorrent Copyright Infringement Damages Malibu Media ............................7

    B.  Malibu Media's Anti-Piracy and First Generation Litigation Efforts ...............9

    C.  Defense Lawyers Employ a One-Size-Fits-All Tactic ..................................11

    D.  Most Common Defenses ...............................................................................12

    E.  Plaintiff Developed the Cross Reference Tool to Overcome the Common Defenses .......12

    F.  Malibu Media Now Only Sues Defendants Individually ................................13

    G.  Malibu Media Has a Proper Purpose For Attaching Exhibit C.........................14

        1.  Exhibit C is Intended to Assist Malibu Media in Identifying the Infringer...............14

           (a)   *Demonstrative Hypothetical* ...........................................................15

              (I)    Third Party Subpoenas ...........................................................15

              (II)   Forensic Computer Examinations ...........................................15

        2.  Exhibit C is Intended to Be Used by Innocent Subscribers in Conjunction With the Exculpatory Evidence Request Form ........................................16

        3.  Exhibit C Is Intended to Prove that the Defendant is a BitTorrent User ...................17

        4.  Exhibit C is Intended to Prove the Infringer Resides in the Subscriber's House .......17

        5.  Exhibit C is Intended to Prove the Defendant Had Knowledge of the Infringement..17

        6.  Exhibit C is Intended to Support Malibu Media's Argument that Its Claims are Plausible ...................................................................................18

    H.  Malibu Media's Counsel Habitually Uses Exhibit C For Its Intended Purpose .............19

    I.  The Exhibit C Identified by This Court as Potentially Objectionable Contains Relevant Information.......................................................................20

        1.  Exhibit C May Be Used to Identify Defendant.............................................20

        2.  Exhibit C May Be Used to Impeach Defendant............................................21

        3.  Knowledge and Absence of Mistake ...........................................................21

    J.  During the Process of Selecting Defendants Counsel Does Not Consider Whether A Specific Downloaded File Will Embarrass a Defendant ................................21

    K.  Exhibit C Has Received Extensive Judicial Scrutiny and Has Been Found to be Proper.22

    L.  Malibu Media Intentionally Allows Defendants to Proceed Anonymously....................23

M.  Courts throughout the Country have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics ..................................................23

N.  Malibu Media's Current Policy is Not to Contact Doe Defendants Regarding Settlements ..................................................................................................24

III.    LEGAL STANDARD FOR FED. R. CIV. P. 11(B)(1) ...................................25

IV.    ARGUMENT ....................................................................................................27

A.  Sanctions Are Inappropriate Because Plaintiff Files Exhibit C With a Proper Purpose ...27

B.  Fed. R. Civ. P. 10(c) Expressly Authorizes Plaintiff to Attach Exhibits........................27

C.  Sanctioning Plaintiff Would Impede Its Ability to Comply with Rule 11(b)(2) .............27

D.  The Evidence Set Forth on Exhibit C May Be Admissible Under Fed. R. Evid. 404(b) ..29

E.  This Court May Not Sanction Plaintiff Based On Pure Speculation, Particularly When that Speculation Has Been Directly Contradicted By Affidavits and Other Competent Evidence.................................................................................................33

F.  Sanctioning Plaintiff Would Chill Legitimate Advocacy................................................34

G.  Previous Judicial Approval of Exhibit C Weighs Heavily Against a Finding that Plaintiff Filed It for An Improper Purpose .......................................................................35

H.  The Court Has the Option to *Sua Sponte* Strike Offensive Cross Reference Hits Under Fed. R. Civ. P. 12(f)..........................................................................................36

V.    CONCLUSION ................................................................................................37

## TABLE OF AUTHORITIES

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 475 F. Supp. 2d 213, 235 (E.D.N.Y. 2007).................................................................................................................38

*Andrews v. Elec. Motor Sys., Inc.*, 767 F. Supp. 853, 856 (S.D. Ohio 1991).............................38

*Boese v. Milwaukee Cnty.*, 801 F. Supp. 220, 227 (E.D. Wis. 1992) ........................................36

*Brown v. Federation of State of Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir. 1987)............28

*Brown v. Michigan*, 2006 WL 1374042, *1 (E.D. Mich. 2006)...................................................36

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990)................36

*DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, 2011 WL 1131110, *12 (N.D. Ill. 2011) ......................................................29, 36

*Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) ................................................32, 33

*FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988)........28

*Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 519 (N.D. Ill. 1985)................................37

*Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495 (7th Cir. 1998) ....................................33

*Harlyn Sales Corp. Profit Plan v. Kemper Financial Services, Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).....................................................................................................................28

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).....................................................................................................................37

*Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) ...............................................37

*Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48 .............................................31

*Malibu Media LLC v. John Does 1-28*, 12-CV-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012).........................................................................................................................25

*Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013).........25

*Malibu Media, LLC v. Does 1-59*, 1CV12-0888 AWI DLB, 2012 WL 4465359 (E.D. Cal. Sept. 25, 2012)....................................................................................................................25

*Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013) .24, 25, 38

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *8 (E.D. Pa. June 18, 2013) .9, 11

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013) ..........................................................................................................26

*Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 701 (E.D. Pa. 2012)...................25

*Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, No. 12-CV-02598-REB-MEH, 2013 WL 1777710 (D. Colo. Feb. 12, 2013)...............................................................25, 26

*Malibu Media, LLC v. John Does 1-21*, 12 C 9656, 2013 WL 2458290 (N.D. Ill. June 6, 2013)25

*Malibu Media, LLC v. John Does 1-23*, 5:12-CV-04442, 2013 WL 1389763 (E.D. Pa. Apr. 3, 2013).........................................................................................................................25

*Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) ..............................................................................................26

*Malibu Media, LLC v. John Does 1-48*, 2:12-CV-426-FTM-29, 2012 WL 6867308 (M.D. Fla. Nov. 15, 2012)...................................................................................................................26

*Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012)...................26

*Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013) ...................................................................................................................................................26

*Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012).........................................................................................................................27

*Malibu Media, LLC v. Reynolds*, 12 C 6672, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013)............25

*Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ....................26

*Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002).35

*Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001) ....................................33

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 448 (7th Cir. 1993)........38

*Patrick Collins, Inc. v. John Does 1-9,* 12-CV-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) ...................................................................................................................................................10

*People v. Corbett*, 611 P.2d 965, 966 (Colo. 1980)........................................................................33

*Reed v. Great Lakes Companies, Inc.,* 330 F.3d 931 (7th Cir. 2003)............................................29

*Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 937 (7th Cir. 2003) ...................................36

*Reinhardt v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 636 F. Supp. 864, 868 (E.D. Mich. 1986) ...............................................................................................38

*Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009) ...................36

*Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988)............36

*State v. Hayward*, 327 Or. 397, 407, 963 P.2d 667, 674 (1998)...................................................33

*State v. Taylor*, 2001-1638 (La. 1/14/03), 838 So. 2d 729, 746 ..................................................33

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) .....................29

*Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) ...............................39

*United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) ..........................................................32

*United States v. DeLuna*, 763 F.2d 897, 916 (8th Cir. 1985).......................................................34

*United States v. Juarez*, 561 F.2d 65, 74 (7th Cir. 1977)..............................................................34

*United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981) .....................................................34

*Vandeventer v. Wabash National Corp.*, 893 F.Supp. 827, 840 (N.D. Ind. 1995)......................29

*Windy City Innovations, LLC, v. Am. Online, Inc.*, 227 F.R.D. 278, 282 (N.D. Ill. 2005) ..........31

## I.    INTRODUCTION

Plaintiff, Malibu Media, LLC ("Malibu Media") has a proper purpose for attaching Exhibit C.   As explained more fully below, Exhibit C is intended to: (a) assist Plaintiff to identify the infringer; (b) allow an innocent doe defendant to identify the infringer and tell Plaintiff the identity of the infringer prior to being served; (c) assist Plaintiff to prove that the Defendant is a BitTorrent user; (d) assist Plaintiff to prove that the infringer resides in the subscriber's house; (e) assist Plaintiff to prove that the defendant had knowledge of the infringement; and (f) assist Plaintiff to defend against motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, *none* of the evidence supports a finding that Malibu Media had an improper purpose for attaching Exhibit C.   Conversely, *all* of the evidence supports a finding that Malibu Media and undersigned attached Exhibit C with a proper purpose. Accordingly, Plaintiff respectfully requests that the Court discharge the Show Cause Order without taking further action.

## II.   FACTS

### A.   BitTorrent Copyright Infringement Damages Malibu Media

Malibu Media was founded by Brigham and Colette Field (husband and wife). *Declaration of Colette Field* at ¶ 3.  It produces what GQ Magazine describes as "perhaps the world's most sophisticated cinema erotica."[1] Malibu Media's owners recognized that there was an unfulfilled niche in the adult entertainment industry; viz., sophisticated erotica which is appealing to men, women and couples.  *Id.* at ¶ 4.  Its owners worked long hours and invested substantially all of their disposable income into their business for *years* before it finally became

---

[1]   *See*   http://www.gq-magazine.co.uk/girls/articles/2013-03/13/brigham-colette-field-x-art-sex-scene

profitable.  *Id.* at ¶ 5.   Malibu Media makes money by distributing its product through a subscription based website, www.x-art.com.  *Id.* at ¶ 6.   It currently has approximately 50,000 subscribers.  *Id.* at ¶ 7.   Malibu Media spends over two million dollars a year producing content. *Id.* at ¶ 8.   And, millions more each year in ancillary costs associated with running its business. *Id.*  Since Malibu Media has real costs, it cannot compete against free copies of its works.  *Id.* at ¶ 9.

On June 10, 2013, Malibu Media became the first plaintiff to ever try a BitTorrent copyright infringement case.  *Id.* at ¶ 10.   The "Bellwether" trial was presided over by the Honorable Michael M. Baylson, United States District Court Judge for the Eastern District of Pennsylvania.  *Id.* at ¶ 11.   Judge Baylson made an audio recording of the trial which is attached as Exhibit A.   All of the testimony contained in Exhibit A is hereby incorporated into this response.[2]   The Bellwether case ended with final judgments on liability in favor of Plaintiff against all three defendants who were tried.  *Id.* at ¶ 12.   And, a final judgment on damages was entered in an amount of $112,500 plus attorneys' fees and costs against defendant Bryan White. *Id.*

"The evidence that Malibu presented at trial was persuasive as to the fact that it had suffered real damages as a result of illegal downloading of its movies through BitTorrent."[3]

---

[2] After it is finished being transcribed by Veritext Court Reporters, Malibu Media will file the written transcript from the Bellwether trial.

[3] On two separate occasions this year, third parties have hacked into Malibu Media's servers, converted its movies into .torrent files and distributed those movies via BitTorrent prior to the date those movies were released onto its website.  Malibu Media spends approximately $15,000 a month on increased security features to prevent this from continuing to happen.  Nearly every week, Malibu Media's subscribers make comments such as "why should we pay for your website when we can get it for free on BitTorrent?"  Malibu Media's subscribers also complain that they can download its movies faster through BitTorrent than from its website.  Accordingly, Malibu Media has taken measures to increase its download speed which cost it approximately $20,000 each month.

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *8 (E.D. Pa. June 18, 2013). Indeed, approximately 80,000 people in the United States use BitTorrent to steal Malibu Media's movies each month. *Declaration of Colette Field* at ¶ 13. Based on the number of infringements being committed each month, Malibu Media knows more people are watching its movies in 2013 than were watching its movies in previous years. *Id.* at ¶ 14. Nevertheless, Malibu Media's subscriber base has not grown because of the theft. *Id.*

**B.   Malibu Media's Anti-Piracy and First Generation Litigation Efforts**

In early 2012, after watching its movies be stolen by unknown thousands each month, Malibu Media engaged Lipscomb, Eisenberg and Baker, PL ("LEB"), an AV Rated law firm in Miami, Florida, to coordinate the filing of lawsuits across the country. *Id.* at ¶ 15. Malibu Media has two goals: (a) deter infringement and (b) obtain compensation for the theft of its movies. *Id.* at ¶ 16. Regarding deterrence, in addition to the lawsuits, Malibu Media sends thousands of notices each month under the Digital Millennium Copyright Act ("DMCA Notices") to websites and search engines. *Id.* at ¶ 17. These notices are intended to cause the websites and search engines to remove Malibu Media's content (or the link to it) from their websites.[4] *Id.*

In early 2012, Malibu Media began filing comparatively small (usually 10-50 Doe Defendants) "same swarm joined" lawsuits with proper personal jurisdiction in courts across the country. *Id.* at ¶ 18. The form of the pleadings and motions in these suits were initially drafted by LEB's attorneys. *Id.* Malibu Media also retained other counsel across the country, including undersigned, whose job it is to serve as lead counsel in those jurisdictions where they were

---

[4] **[REDACTED]**

admitted and practice.[5]  *Id.* at ¶ 19.  The majority of judges at that time were holding that same swarm joined cases were not only permitted under Fed. R. Civ. P. 20, but were also proper under Fed. R. Civ. P. 1 and 20.  *Declaration of Mary Schulz* at ¶ 3.

During the first six months of 2012, Malibu Media sued over two thousand John Doe Defendants through same swarm joined lawsuits.  *Declaration of Colette Field* at ¶ 20.  During that same six month period, hundreds of thousands of people stole Malibu Media's movies.  *Id.* While suing a couple of thousand people may seem like an extreme measure, as one court opined "[t]he proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people. The volume of lawsuits alone does not indicate any impropriety." *Patrick Collins, Inc. v. John Does 1-9,* 12-CV-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012).   In the aggregate, every year, BitTorrent infringement causes millions of dollars of damage to Malibu Media.  *Id.* at ¶ 21.  With this as the background, the decision to act made sense to Malibu Media.  *Id.*  As the former Register of Copyrights testified, these suits are necessary to deter infringers:

> While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement

---

[5] While LEB monitors, coordinates, advises and assists undersigned and Malibu Media's other lead counsel, it is not lead counsel in any case where it does not make an appearance.  Indeed, undersigned is solely responsible for what occurs in the cases filed by undersigned.  Further, undersigned, like all of Malibu Media's lead counsel, have a direct line of communication to Malibu Media's owners, and LEB does not have the power to direct undersigned to take any action.  Instead, Malibu Media retains all such power.

or against the persons engaging in individual acts of infringement using such services.[6]

Significantly, Judge Baylson held, "I emphasize that Malibu is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a "copyright troll" – i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers. Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media, LLC v. John Does 1, 6, 13, 14,* 2013 WL 3038025, *1 (E.D. Pa. June 18, 2013). Further, Judge Baylson opined "many internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Id.* at n.1.

C.   **Defense Lawyers Employ a One-Size-Fits-All Tactic**

In response to Malibu Media's and third parties' BitTorrent copyright infringement lawsuits, a group of approximately twenty attorneys (the "Regulars") began focusing on defending these cases. *Declaration of M. Keith Lipscomb,* at ¶ 3. All of the Regulars, as well as many of the other defense lawyers and *pro se* litigants communicate with each other through online blogs. *Id.* at ¶ 4. These blogs are administered by bitter former defendants sued by third party plaintiffs for BitTorrent copyright infringement. *Id.* at ¶ 5. The bloggers read and analyze virtually every paper filed in a suit brought by Malibu Media. *Id.* Plaintiff's counsel was told by one of the Regulars that they have a private Listserve so that they may discuss legal strategies and exchange template pleadings and motions. *Id.* at ¶ 6.

---

[6] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

D.    **Most Common Defenses**

The Regulars, defense counsel generally, and *pro se* litigants routinely assert disingenuous and often perjurious defenses. *Id.* at ¶ 7. The five most common defenses are: (1) the infringement was not committed by either me or anyone else in my house; (2) the infringement was not committed by me but instead by someone else in my house; (3) a third party used my unsecure Wi-Fi router; (4) my password protected Wi-Fi router was hacked by an unknown third party; and, (5) the complaint does not state a plausible cause of action because an IP Address is not a person. *Id.* at ¶ 8.

E.    **Plaintiff Developed the Cross Reference Tool to Overcome the Common Defenses**

In June 2012, in order to overcome the most common defenses, Plaintiff's counsel began working with IPP, Ltd., who performs the pre-suit investigation for Malibu Media, on developing better evidence against the infringers. *Id.* at ¶ 9. Specifically, Plaintiff's counsel asked IPP, Ltd. to expand the universe of .torrent files it scans so that Malibu Media could disprove *or* corroborate a defendant's defense. *Id.* at ¶ 10. Additionally, Plaintiff's counsel wanted expanded surveillance of the BitTorrent activity associated with an IP Address so that it could better argue that its cases are plausible under Fed. R. Civ. P. 12(b)(6). *Id.* Beginning on July 16, 2012, IPP, Ltd. greatly expanded the number of .torrent files it was scanning. *Id.* at ¶ 11. Currently, IPP, Ltd. is scanning approximately ten million (10,000,000) .torrent files each day. *Id. See also* Exhibit A, testimony of Michael Patzer.

Plaintiff and its counsel refer to the evidence of third party infringements as the "Cross Reference Tool." *Id.* at ¶ 12. Since developing the Cross Reference Tool, the first thing Plaintiff's counsel do after a Defendant raises one of the most common defenses is go to the Cross Reference Tool and then perform additional research about the defendant. *Id.* at ¶ 13.

Specifically, Plaintiff's counsel are trained to review the defendant's social media webpages, e.g., Facebook, LinkedIn and Twitter. *Id.* at ¶ 14. Counsel also reviews any other online biographies which can be found, such as those listed on an employer's or social group's webpage. *Id.* at ¶ 15. Additionally, counsel are trained to look at Google Earth to ascertain where the defendant lives, the type of dwelling, and the defendant's proximity to third parties. *Id.* By comparing all of the publicly available information about a defendant with what is contained on the Cross Reference Tool, counsel for Malibu Media are often able to confirm that the defendant is the actual infringer. *Id.* at ¶ 16. Alternatively, counsel learns that the infringer is some other identifiable person in the subscriber's home. *Id.* at ¶ 17. In short, the Cross Reference Tool is habitually used as a first resource. *Id.* at ¶ 18.

### F.   <u>Malibu Media Now Only Sues Defendants Individually</u>

Malibu Media and its counsel are constantly striving to improve the strength of the cases that they file. *Id.* at ¶ 25. With that in mind, at the beginning in 2013, Malibu Media ceased suing people in joined suits and began to only sue defendants individually. *Id.* at ¶ 26. By so doing, Malibu Media was able to focus exclusively on people whom it describes as "persistent on-line infringers." *Id.* The form of the individual defendant complaint was created by M. Keith Lipscomb of LEB. *Id.* at ¶ 27. Exhibit C to a complaint includes everything that is in the Cross Reference Tool at the time the complaint is created. *Id.* at ¶ 28. Undersigned has never used the additional pornographic movies on Exhibit C to assert improper leverage to coerce a settlement. *Declaration of Mary Schulz* at ¶ 5. Indeed, it had never crossed undersigned's mind, period. *Id.* at ¶ 7. Indeed, undersigned is already representing a client that is suing for the infringement of copyrights covering erotic adult movies. *Id.* Regardless, the purpose of Exhibit C is not now nor

has it ever been to use it to embarrass defendants into settling. *Id. See also Declaration of M. Keith Lipscomb* at ¶ 29.

The purpose of Exhibit C is to make Malibu Media's case stronger. *Declaration of M. Keith Lipscomb* at ¶ 30. As explained below, Exhibit C does make Malibu Media's case stronger. Indeed, Exhibit C better enables Plaintiff to identify the infringer and overcome common defenses. *Id.* at ¶ 31.

### G.   Malibu Media Has a Proper Purpose For Attaching Exhibit C

*1.   Exhibit C is Intended to Assist Malibu Media in Identifying the Infringer*

Exhibit C is analogous to a thousand crumbs of bread all of which lead directly to the infringer. *Id.* at ¶ 32. This is important because BitTorrent copyright infringement litigation is basically a "whodunit." *Id.* Malibu Media sues the subscriber of the internet which was used to infringe. *Id.* at ¶ 33. It alleges in good faith that the subscriber is the infringer. *Id.* This allegation is not only plausible but most often true. *Id.* However, in some instances, someone living in the subscriber's home is the infringer. *Id.* at ¶ 34. Usually (although not always) the defendant will initially deny committing the infringement. *Id.* at ¶ 35. The information on Exhibit C is intended to enable Malibu Media to identify the actual infringer. *Id.* at ¶ 36. In short, the electronic evidence associated with defendants' connections to all or some of the content on Exhibit C paints a picture of a person. *Id.* at ¶ 37. This picture often includes information about the infringers' hobbies, favorite movies and music, games, characters in games, computer software, computer hardware, academic interests, house renovation plans, favorite cities, sports teams, etc. *Id.*

14

### (a)   Demonstrative Hypothetical

A hypothetical example illustrates this point: a defendant is sued for infringing twelve of Malibu Media's movies.  The Cross Reference Tool (Exhibit C) shows that the defendant downloaded four Chicago White Sox games, an on-line Fantasy Role Playing Game, a how-to manual for fly fishing, and pornography for which the target audience is clearly heterosexual men.  First, because Plaintiff attached Exhibit C to the Complaint, the defendant will be less likely to deny the infringement because he knows Malibu Media can associate him with these things.  Second, if the defendant does deny the infringement, Plaintiff will depose defendant and establish that he is a lifelong White Sox fan, is "Merlin" in the on-line Fantasy Role Playing Game, enjoys fly fishing, and is a heterosexual man.

### (I)   Third Party Subpoenas

If perjured testimony is proffered during the hypothetical defendant's deposition, Plaintiff can subpoena the Fantasy Role Playing game, Google's search results, and other third parties to impeach defendant.

### (II)   Forensic Computer Examinations

Similarly if Defendant testifies he did not use BitTorrent to download these files, Plaintiff's computer forensic expert can look for evidence of the files on the Defendant's computer.  Even if these files have been deleted, they may still be in the unallocated space of the computer.

Ultimately, the ability of a defendant to deny all of the tying evidence on an Exhibit C is not only difficult but dangerous because so much of it can be verified through third party subpoenas and computer forensics.

2.  *Exhibit C is Intended to Be Used by Innocent Subscribers in Conjunction With the Exculpatory Evidence Request Form*

Malibu Media and its counsel believe that the infringer is almost always – meaning ninety-nine plus percent of the time – a resident (or *de facto* resident) in the subscriber's home. *Id.* at ¶ 38.  As previously stated, the infringer is usually the subscriber.  *Id.*  However, if the Doe Defendant is an innocent subscriber then he or she will know the infringer well.  *Id.*

Exhibit C is attached to complaints for the purpose of allowing an innocent subscriber to review it and identify the infringer.  *Id.* at ¶ 39.  Toward that end, each complaint attaches an Exculpatory Evidence Request Form.  Malibu Media intends for an innocent subscriber to use the Exculpatory Evidence Request Form and Exhibit C to identify the actual infringer; and, thereafter, tell Plaintiff the identity of the infringer – all prior to Plaintiff serving any party.  *Id.* at ¶ 40.  From Plaintiff's perspective, giving an innocent subscriber the opportunity to do this is not only fair and morally right – it is also in Malibu Media's financial interest.

To explain, attorneys' fees are discretionarily awardable under the Copyright Act.  When a Doe Defendant refuses to identify the infringer despite Malibu Media's request and, thereafter, Malibu Media voluntarily dismisses that Doe Defendant with prejudice so that it can sue the actual downloader, the initial Doe Defendant will legally be deemed to be the prevailing party. The initial Doe Defendant could then bring a motion for attorneys' fees.  In response to any such motion, Malibu Media would argue that an award of attorney fees against it would be inconsistent with the purpose of the Copyright Act, in part, because the Doe Defendant did not – but could have – told Plaintiff the identity of the infringer prior to being served.  There is significant case law to support Malibu Media's position under these circumstances.

### 3.   *Exhibit C Is Intended to Prove that the Defendant is a BitTorrent User*

The information on Exhibit C is intended to assist Plaintiff in proving that a defendant is a BitTorrent user.  *Id.* at ¶ 41.  To explain, many defendants deny under oath that they have ever used BitTorrent.  *Id.* at ¶ 42.   Whether a defendant has ever used BitTorrent is relevant to whether the defendant used BitTorrent to download and distribute Malibu Media's movies.  *Id.* Plaintiff is able to prove many defendants' denials are incredible by establishing a connection between the content on Exhibit C and those defendants.  *Id.* at ¶ 43.

### 4.   *Exhibit C is Intended to Prove the Infringer Resides in the Subscriber's House*

The information on Exhibit C is intended to prove that the infringer resides in the subscriber's house.  *Id.* at ¶ 44.  By establishing that the infringement occurred consistently over a long period of time, Malibu Media is more easily able to disprove a defendant's assertion that a guest or other non-resident committed the infringement.  *Id.* at ¶ 45.  First, the further one is away from a wireless router the slower the internet connection.  *Id.* at ¶ 46.  Repetitive hits in rapid succession evince close proximity to the router.  *Id.*  Second, a long history of infringement makes it much less probable that someone was "camping out" near a defendant's house for the purpose of illegally downloading pornographic movies through BitTorrent.  *Id.* at ¶ 47.  As strange as that defense sounds, it is repeatedly raised against Malibu Media in these cases.  *Id.*

### 5.   *Exhibit C is Intended to Prove the Defendant Had Knowledge of the Infringement*

Exhibit C is intended to prove that a defendant had knowledge of the infringement.  *Id.* at ¶ 48.  To explain, some of the copyright owners of the works contained on an Exhibit C may

have sent defendant a DMCA notice.[7]  *Id.* at ¶ 49.  If the defendant has received a DMCA notice then said defendant cannot credibly deny that he or she was unaware that his or her internet was being used for infringing purposes.  *Id.*  Additionally, BitTorrent is a bandwidth hog.[8]  *Id.* at ¶ 50.  And, heavy BitTorrent users often exceed their internet service provider's maximum allowable bandwidth use policy.  *Id.*  Many internet service providers warn heavy BitTorrent users about exceeding the provider's bandwidth use policy and advise the subscriber to secure his or her Wi-Fi router.  *Id.* at ¶ 51.  These warnings are associated with the BitTorrent use pled on Exhibit C.  *Id.*  Finally, the internet speed of many wireless routers decreases with use.  *Id.* at ¶ 52.  Put another way, bandwidth can be analogized to a water pipe.  Divide the water pipe too many times and only a trickle of water will come out.  If one's internet speed is incredibly slow it may be a sign of heavy BitTorrent use.  *Id.* at ¶ 53.  Several Doe Defendants have admitted to knowing that their internet speed was unusually slow but until pressed denied knowing about BitTorrent.

> 6.    *Exhibit C is Intended to Support Malibu Media's Argument that Its Claims are Plausible*

Malibu Media intends for Exhibit C to assist it in arguing that its claims are plausible under Rule 12(b)(6).  *Id.* at ¶ 54.  While Malibu Media has never had a case dismissed pursuant to Fed. R. Civ. P. 12(b)(6), many Doe Defendants file motions arguing that it is not plausible for

---

[7]  The Motion Picture Association of America and the Recording Industry Association of America have recently started a program called "Six Strikes."  Participation in it is limited to members of those trade associations.  The trade associations are sending DMCA notices to BitTorrent users.  Each step of the Six Strike process escalates in intensity by the ISP.  Malibu Media attempts to find Defendants that are likely to have received DMCA notices from these entities.

[8]  *See* http://torrentfreak.com/bittorrent-accounts-for-35-of-all-upload-traffic-vpns-are-booming-130518/ estimating that 35% of all upload internet traffic is through BitTorrent.  *See also,* http://en.wikipedia.org/wiki/Bit_torrent_search_engine#Decentralized_keyword_search estimating that 35% of all internet traffic is consumed by people using BitTorrent.

Plaintiff to identify the infringer from an IP Address.  *Id.* at ¶ 55.  Exhibit C contains a plethora of information about the defendant beyond their merely having downloaded Malibu Media's movies.  *Id.*  Finally, as discussed in the argument section, the Honorable Judge Wright in the Central District of California held that additional surveillance of a defendant's BitTorrent use is necessary to state a plausible claim under Rule 12(b)(6).  He further held pleading that this additional surveillance was performed is necessary for a plaintiff to comply with Fed. R. Civ. P. 11's requirement that a plaintiff perform an adequate pre-suit factual investigation.

### H.   Malibu Media's Counsel Habitually Uses Exhibit C For Its Intended Purpose

There are too many examples of the proper use of the Cross Reference Tool and Exhibit C to be fully chronicled in this response.  Nevertheless, what follows is a brief summary of ten examples:

- Defendant filed a motion for Plaintiff to post a bond for attorney's fees, claiming he is likely to be the prevailing party.  He attached a declaration stating he did not use BitTorrent nor commit the infringement.  Defendant's public LinkedIn profile listed himself as an expert user of occupational software called SolarWinds.  Defendant's Cross Reference contained that exact software. *See Declaration of Paul Nicoletti* at ¶¶ 8 - 14.

- **[REDACTED]**

- **[REDACTED]**

- Defendant in the Bellwether trial filed a declaration stating he previously had an open Wi-Fi network for anyone to access and upon learning of the lawsuit, he secured it.  He promised that the infringement will stop.  The Cross Reference showed the infringement through BitTorrent continued, with the exception of Malibu Media's movies, for approximately four more months.  It did not stop until Defendant's counsel was notified of the Cross Reference.  The

Cross Reference enabled Defendant to identify the infringer in his home.  *See Declaration of Christopher P. Fiore* at ¶¶ 7 - 15.

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

I. **The Exhibit C Identified by This Court as Potentially Objectionable Contains Relevant Information**

The instant show cause order discusses the information contained on Exhibit C **[REDACTED]**.  In this section, Malibu Media will explain how the information on that Exhibit is potentially relevant.  Significantly, Malibu Media has not even obtained Defendant's identity yet.  Consequently, Plaintiff has not yet even compared the information on Exhibit C to publicly available information about the Defendant.  Nevertheless, the information about the Defendant on Exhibit C is telling.

1. *Exhibit C May Be Used to Identify Defendant*

**[REDACTED]**

Upon receiving the identity of Defendant, Plaintiff will compare Defendant's public social network information such as Facebook, LinkedIn, Twitter, Work Biographies, Google Earth, and message board postings to correlate to Exhibit C.  Plaintiff will also examine evidence on Defendant's computer, review credit card receipts of similar purchases and analyze other information it receives from discovery to correlate Defendant to his hobbies.

### 2.      *Exhibit C May Be Used to Impeach Defendant*

Exhibit C contains several tools which Defendant may use to delete information, and which Plaintiff may look for when seeking to uncover any such deletion. **[REDACTED]** Significantly, this type of information was outcome dispositive in the Bellwether Trial for defendant Bryan White.  Indeed, Bryan White deleted his hard drive and attempted to perpetrate a fraud on Plaintiff and the Court.  *See* Exhibit D.

### 3.      *Knowledge and Absence of Mistake*

**[REDACTED]**

### J.    **During the Process of Selecting Defendants Counsel Does Not Consider Whether A Specific Downloaded File Will Embarrass a Defendant**

Each month approximately 80,000 U.S. citizens steal Plaintiff's movies through BitTorrent.  *Declaration of Colette Field* at ¶ 13.  From that universe of potential defendants, each month in 2013, counsel for Plaintiff has chosen between 100-200 defendants to sue. *Declaration of Emilie Kennedy* at ¶ 5.  The goal is to pick the worst of the worst infringers, and those defendants against whom Plaintiff can win a case.  *Id.* at ¶ 6.  Accordingly, a computer script is run to cull down the universe **[REDACTED]**  *Id.* at ¶ 7.  Significantly, the script does not include a content filter, much less one that seeks to locate embarrassing content.  *Id.*  Once the universe has been narrowed, an attorney reviews the potential defendants' Cross Reference hits.  *Id.* at ¶ 8.

The goal is to find the cases which have the best evidence on them that will aid Plaintiff in identifying a specific person.  *Id.* at ¶ 9.  That is the primary purpose of the culling process during suit creation.  *Id.*  People are *not* intentionally chosen because of any particular offensive material on the Cross Reference.  *Id.* at ¶ 10.  None of Malibu Media's attorneys have ever been instructed by Malibu Media to intentionally choose particularly offensive material to be included

21

on Exhibit C. *Id.* at ¶ 11. None of Malibu Media's attorneys have ever discussed between or among themselves that Exhibit C should contain offensive material. *Id.* at ¶ 12. In short, this is not a purpose either Plaintiff or its counsel has *ever* considered. *Id.* at ¶ 13.

**K.    Exhibit C Has Received Extensive Judicial Scrutiny and Has Been Found to be Proper**

As part of the Bellwether cases, Judge Baylson scrutinized Plaintiff's Cross Reference hits when a defendant raised similar concerns. *See Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013). Ruling on the *exact issue* before this Court, Judge Baylson held "[a]fter consideration, the Court finds no need to strike Paragraph 53 or Exhibit F[9] of the Amended Complaint in 12–2088 or to issue sanctions. Malibu has included this material in order to show a pattern or practice of infringement by Doe 13. It is not suing upon these infringements; it is making an allegation which may become evidence to support its claim to relief." *Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013).

Malibu Media has also received 415 separate orders granting it leave to subpoena a defendant's ISP in an individual suit that contained Exhibit C. These orders span 14 (fourteen) separate districts, including nearly every district court in the Seventh Circuit. *See* Exhibit E. Further, Plaintiff's counsel in Florida recently attended two hearings presided over by two separate judges. Each of these judges inquired specifically about the purpose of Exhibit C. Neither judge found that Malibu Media's inclusion of it was improper. *See Declaration of Emilie Kennedy* ¶¶ 33 - 39 and *Declaration of Jason Cooper* ¶¶ 6 - 11.

---

[9] In this case Plaintiff's Exhibit C happened to be filed as "Exhibit F".

**L.**   **Malibu Media Intentionally Allows Defendants to Proceed Anonymously**

Malibu Media has informed its counsel to never oppose a defendant's motion to proceed anonymously. This has been the case across the board for *every* individual suit it has ever filed. Numerous courts throughout the country have documented this policy.  While not a complete list *see Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 701 (E.D. Pa. 2012) ("Plaintiff does not object to the issuance of a protective order to prevent the public disclosure of the John Does' identities); *see also Malibu Media, LLC v. Reynolds*, 12 C 6672, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013) (same); *Malibu Media LLC v. John Does 1-28*, 12-CV-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012) (same); *Malibu Media, LLC v. John Does 1-23*, 5:12-CV-04442, 2013 WL 1389763 (E.D. Pa. Apr. 3, 2013) (same); *Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013) (same); *Malibu Media, LLC v. Does 1-59*, 1CV12-0888 AWI DLB, 2012 WL 4465359 (E.D. Cal. Sept. 25, 2012) (same); *Malibu Media, LLC v. John Does 1-21*, 12 C 9656, 2013 WL 2458290 (N.D. Ill. June 6, 2013) (same); *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, No. 12-CV-02598-REB-MEH, 2013 WL 1777710 (D. Colo. Feb. 12, 2013) (same); *Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013) (same); *Malibu Media, LLC v. John Does 1-48*, 2:12-CV-426-FTM-29, 2012 WL 6867308 (M.D. Fla. Nov. 15, 2012) (same).

**M.**   **Courts throughout the Country have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics**

Most recently and notably, after concluding trial with Plaintiff, the Honorable Judge Baylson found Malibu Media did not use "unscrupulous tactics and false accusations to collect millions of dollars from innocent and injured computer users." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).  Similarly, the Honorable Judge Hegarty of the District of Colorado stated: "the Court has also witnessed

firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, No. 12-CV-02598-REB-MEH, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "Furthermore, Doe 5 has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).[10]

### N.   Malibu Media's Current Policy is Not to Contact Doe Defendants Regarding Settlements

In connection with beginning to sue infringers individually, Malibu Media's counsel discussed between and among themselves a policy by which they would *not* contact doe defendants that were sued in an individual suit for the purpose of soliciting a settlement.[11]   That policy has been in effect for *every* individual suit that Malibu Media has filed.  Significantly, that policy was in effect at the time the instant suits were filed.  Accordingly, no phone calls or letters

---

[10] The only judges that have ever severely criticized Plaintiff's litigation did so *sua sponte* without giving Malibu Media the opportunity to explain its actions.

[11] This is a pre-service policy.  During the lawsuit, Rule 26(f) requires the parties to discuss settlement.  And, if necessary or appropriate, Plaintiff may first raise the issue of settling a matter during an active litigation.

have ever been sent to doe defendants soliciting a settlement in an individual suit.  Instead, doe defendants' attorneys routinely call Plaintiff's counsel for the purpose of discussing a dispute. Usually at the request of opposing counsel, those conversations involve settlement negotiations. And, Malibu Media's attorneys, including undersigned, negotiate with adverse counsel in good faith.

To be clear, in every individual case filed by undersigned, undersigned is the attorney and only person who negotiates a settlement.  It is undersigned's reputation for fair dealing which is at stake if an improper tactic is used.  Like most lawyers, undersigned's reputation is her greatest asset, and undersigned is not willing to risk undersigned's reputation for any reason, period.

Significantly, it has also been Malibu Media's policy, absent compelling exculpatory evidence, to serve every defendant sued in an individual case.  In short, while Malibu Media is not adverse to resolving a dispute early in the process, Malibu Media intends to litigate and win its individual cases including all at issue here.

## III.   LEGAL STANDARD FOR FED. R. CIV. P. 11(B)(1)

Rule 11(b)(2) *only* permits a court to enter sanctions when it finds that a party filed a paper for "an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11.  "It is important for federal courts, district and appellate, to keep in mind the serious consequences that can flow from an award of [Rule 11] sanctions against an attorney." *Harlyn Sales Corp. Profit Plan v. Kemper Financial Services, Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993) (refusing to sanction an attorney when there was doubt). Rule 11 "is a tool that must be used with the utmost care and caution." *FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988) (reversing District Court's entry of Rule 11 sanctions).  "A lawyer's reputation for integrity, thoroughness and

competence is his or her bread and butter," and should not be impugned absent careful analysis. *Id.* Courts are "expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted." *Harlyn* at 1269.

"Subjective bad faith or malice [is relevant] when the suit is objectively colorable." *Brown v. Federation of State of Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir. 1987), *rev. on other grounds*. The Seventh Circuit explained Rule 11(b)(1) "effectively picks up the torts of abuse of process (filing an objectively frivolous suit) and malicious prosecution (filing a colorable suit for the purpose of imposing expense on the defendant rather than for the purpose of winning)." *Id.* The Seventh Circuit went beyond merely describing a party's subjective intent as relevant by holding that in the context of a Rule 11(b)(1) motion, "the district court *must* find out why Szabo-Digby pursued litigation" (emphasis added). *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). Further, "[c]ourts *must* determine if there is sufficient evidence in the record to show an improper purpose when imposing Rule 11 sanctions." *DeBartolo v. Health and Welfare Dept. of Const. and General Laborers' Dist.*, 2011 WL 1131110, *12 (N.D. Ill. 2011) (emphasis added.) "Courts refuse to *infer* an improper purpose from a filing which is well-grounded in fact and warranted by law." *Vandeventer v. Wabash National Corp.*, 893 F.Supp. 827, 840 (N.D. Ind. 1995) (emphasis added).

When, as here, there is direct evidence of a proper purpose judicial speculation is *not* a sufficient basis to sustain a sanctions order. *See Reed v. Great Lakes Companies, Inc.,* 330 F.3d 931 (7th Cir. 2003). ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist. The speculation is too thin to sustain that order.") The facts of Reed are illustrative. Reed had previously sued 15 different employers

for discrimination in violation of Title VII.  None of the previous judges in the 15 discrimination lawsuits found his lawsuits to be frivolous.  Nevertheless, the reversed judge speculated that Reed was an extortionist.   The Seventh Circuit reversed because pure speculation is insufficient.

## IV.   ARGUMENT

### A.   Sanctions Are Inappropriate Because Plaintiff Files Exhibit C With a Proper Purpose

As set forth above, Plaintiff and its counsel habitually use Exhibit C for (a) determining the identity of the infringer; (b) allowing an unserved doe defendant the ability to provide Plaintiff with the identity of the actual infringer;  (c) proving that defendant is a BitTorrent user; (d) proving that the infringer resides in defendant's home; (e) proving that defendant had knowledge of BitTorrent use; (f) impeaching defendant; (g) determining if a defendant wiped his hard drive or destroyed evidence; and (h) proving that Plaintiff's claims are plausible.  All of these reasons are proper.

### B.   Fed. R. Civ. P. 10(c) Expressly Authorizes Plaintiff to Attach Exhibits

Fed. R. Civ. P. 10(c) expressly allows a party to attach exhibits to a complaint: "a statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10 (c).  "Federal Rule 10(c) authorizes the incorporation of 'any written instrument which is an exhibit' attached to a pleading and makes the material thus incorporated an integral part of that pleading for all purposes."  § 1327 Exhibits as Part of the Pleadings, 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed.).

### C.   Sanctioning Plaintiff Would Impede Its Ability to Comply with Rule 11(b)(2)

Consequences exist when a Plaintiff does not attach an exhibit central to its claims to its complaint.  "[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading,

a significant number of cases from throughout the federal court system make it clear that the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case."  *Id.  See also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.")

Here, Exhibit C is central to Malibu Media's claims because it establishes Plaintiff can plausibly identify the infringer.  Plaintiff has responded to dozens of Rule 12(b)(6) motions asserting Plaintiff's claims are not plausible.  While these motions have consistently been denied, Judge Wright from the Central District of California recently opined in *Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48, that a copyright BitTorrent plaintiff may face Rule 11 violations for not attaching information contained in Plaintiff's cross reference to its complaint.

In Judge Wright's Order to Show Cause, Judge Wright found "[p]laintiff fails to allege facts in the Amended Complaint to show how Benjamin Wagar is the infringer, other than noting his IP address, the name of his BitTorrent client, and the alleged time of download." *Id*.  Judge Wright further elaborated on suggestions for the plaintiff - to avoid Rule 11 sanctions. Specifically, Judge Wright suggested compiling other BitTorrent content a defendant is downloading to help identify whether the infringer lives in the subscriber's home, just as Plaintiff has done with its Cross Reference.

> [T]he Court is not convinced that there is no solution to the problem of identifying the actual infringer. … In addition, since Plaintiff is tracking a number of related copyrighted videos, Plaintiff can compile its tracking data to determine whether other copyrighted videos were downloaded under the same IP address. This may

suggest that the infringer is likely a resident of the subscriber's home and not a guest.

*Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48 at *6-7 (emphasis added).

When a party submits a pleading to the court, the party certifies pursuant to Federal Rule of Civil Procedure 11(b)(3) that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." *Windy City Innovations, LLC, v. Am. Online, Inc*., 227 F.R.D. 278, 282 (N.D. Ill. 2005) citing Fed. R. Civ. P. 11(b)(3) (emphasis added).  Although exhibits are not always necessary to attach to a complaint, Plaintiff has a duty under Rule 11 to certify that evidentiary support exists for its claims.  An improper purpose under Rule 11(b)(1) should not be imputed to Plaintiff when it is demonstrating its evidentiary support as required by Rule 11(b)(3).

**D.** **The Evidence Set Forth on Exhibit C May Be Admissible Under Fed. R. Evid. 404(b)**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012).

Even though "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character", it may be admissible for other purposes, "such as proving motive,

29

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "[T]he rule does not preclude the use of other incidents when the issue is the likelihood that the person will engage in certain conduct in the future." § 5239 Other Crimes, Wrongs, or Acts—General Rule, 22A Fed. Prac. & Proc. Evid. § 5239 (2d ed.).

Consistent with courts throughout the country, the Seventh Circuit has held that a defendant's interests in photos, books, movies and television constitutes probative evidence other than to prove character. In *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001), the Seventh Circuit found that Defendant's movie and pictures collection, some of which depicted violent or otherwise controversial pornography, was probative evidence because it demonstrated Defendant's obsession which led to his crime.

> The fact that Dressler maintained a collection of videos and pictures depicting intentional violence is probative of the State's claim that he had an obsession with that subject. A person obsessed with violence is more likely to commit murder, and therefore the videos and photographs are relevant. Similarly, a person who possesses photographs of homosexual acts coupled with depictions of extreme violence might be more inclined to commit a crime exhibiting the characteristics of homosexual overkill.

*Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) (internal citations omitted) (emphasis added). Just as where a person who is obsessed with violence is more likely to commit murder, a person who uses BitTorrent every day to steal content from other intellectual property holders is more likely to steal Plaintiff's content through BitTorrent.

Other courts throughout the country have admitted evidence of defendant's hobbies and interests to demonstrate knowledge, method, plan, and lack of accident. *See, e.g., People v. Corbett*, 611 P.2d 965, 966 (Colo. 1980) (admission of defendant's knowledge in martial arts probative to show physical accomplishments); *State v. Taylor*, 2001-1638 (La. 1/14/03), 838 So. 2d 729, 746 (Defendant's interest in the movie Natural Born Killers was admissible); *State v.*

*Hayward*, 327 Or. 397, 407, 963 P.2d 667, 674 (1998) (defendant's interest in death metal admissible to show intent).

> This circuit has developed a four-part test to determine whether evidence of prior acts is admissible: (1) the evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and the party in question committed it; and (4) the prejudicial effect of the evidence must not substantially outweigh its probative value.

*Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001). "We do not require that there be no prejudicial effect, only that the prejudice not be unfair." *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495 (7th Cir. 1998).

In this case, Plaintiff's Cross Reference is not used as evidence to demonstrate propensity, but instead used to identify the Defendant, demonstrate that Defendant had knowledge of the infringement and the absence of any mistake. Additionally Plaintiff's Cross Reference is evidence used to impeach defenses and denials. The acts on the Cross Reference took place simultaneously with the infringement of Plaintiff's movies, and often are ongoing. The infringements took place using the same IP address, enabling a jury to conclude that the acts occurred and were committed by the same person. Any prejudice Defendant might face is substantially outweighed by probative value. The ongoing and continuous nature of the infringement on the Cross Reference also shows a likelihood of future conduct by the same infringer, which is relevant because Plaintiff's requested relief includes that the Defendant be permanently enjoined from infringing Plaintiff's works.

Plaintiff's Cross Reference evidence is also admissible to establish Defendant's identity. "Since identity, like intent, is usually an ultimate issue in the case, there is no need to look beyond the inference to identity in determining the relevance of other crimes, wrongs, or acts

31

offered under this exception." § 5246 Other Crimes, Wrongs, or Acts—Identity, 22A Fed. Prac. & Proc. Evid. § 5246 (2d ed.). Courts have found evidence relevant to prove identity in a variety of situations. *See e.g. United States v. DeLuna*, 763 F.2d 897, 916 (8th Cir. 1985) (Evidence that defendant had been in prison was admissible where the only way to identify voices on tape was through nicknames corresponding to prison log of defendant's visitors.); *United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981) (Evidence that defendant had a false driver's license was admissible to prove identity); *United States v. Juarez*, 561 F.2d 65, 74 (7th Cir. 1977) (evidence of sale of heroin used to prove identity). Here, all of the different pieces of evidence on the Cross Reference either will or may be used to identify a defendant.

In *Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002), the Northern District of Illinois held a motel's long standing pattern of bug infestations was relevant in a claim for emotional distress arising from insect infestation to show knowledge and mental state. Specifically, the court found:

> All four prongs of Rule 404(b) are met as the evidence sought to be excluded (1) establishes the defendants' knowledge of a dangerous condition and absence of mistake or accident, (2) is evidence primarily from the months immediately prior to Mathiases' arrival, (3) shows that defendants repeatedly placed invitees in infested rooms and that it shows the defendants committed the same act towards the Mathiases, and (4) the probative value is not outweighed by the danger of unfair prejudice.

*Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002).

Likewise, here, Plaintiff's Exhibit C is relevant to prove both knowledge and absence of mistake. Just like in *Mathias*, the evidence begins at the same time or immediately prior to the infringement, and shows that the infringer repeatedly downloaded content on BitTorrent. Further, it shows that Defendant committed the same act with Plaintiff's movies. This is evidence of Defendant's intent, knowledge and ability, and the probative value of much if not all

32

of it outweighs the danger of unfair prejudice.  However, if the Court finds some of the content on the cross reference causes unfair prejudice, the Court may provide a limiting instruction or omit those references.

Adjudging the admissibility of the evidence contained on Exhibit C prior to facts being developed during discovery which demonstrate the relevance of the evidence would be premature and unfair to Plaintiff.  Indeed, Plaintiff's Due Process rights would be violated if it were not given the opportunity, after the close of discovery, to argue that any particular piece of evidence on Exhibit C is admissible under the test set forth in *Mathias* and other applicable law.

E. **This Court May Not Sanction Plaintiff Based On Pure Speculation, Particularly When that Speculation Has Been Directly Contradicted By Affidavits and Other Competent Evidence**

Rule 11 sanctions cannot be sustained on mere speculation.  *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 937 (7th Cir. 2003) ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist. The speculation is too thin to sustain that order"); *Vollmer v. Selden*, 350 F.3d 656, 662-63 (7th Cir. 2003) ("[I]n this case Selden and Rosenthal's past objections, which have never been adjudged frivolous, cannot form the proper basis of a sanctions award.").  *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988) ("A district court cannot award Rule 11 sanctions on the basis of its speculation that a party would have filed certain papers had that party been given the opportunity.); *DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist.*

33

*Council of Chicago & Vicinity*, 2011 WL 1131110, *12 (N.D. Ill. 2011) ("Defendant's speculation that these cases were filed for an improper purpose is insufficient to impose Rule 11 sanctions."); *Brown v. Michigan*, 2006 WL 1374042, *1 (E.D. Mich. 2006) ("Petitioner's allegations of purposeful delay are speculative and unsupported. Sanctions are therefore unwarranted."); *Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009) ("Based on the record and the parties' memoranda, sanctions are completely unwarranted in this case. The accusations made against Kearns are devoid of evidentiary support and are largely based upon plaintiff's own mischaracterizations and speculation."); *Boese v. Milwaukee Cnty.*, 801 F. Supp. 220, 227 (E.D. Wis. 1992) ("There is insufficient evidence in the record of any attempt to delay, harass, or increase the costs of litigation. Similarly, although the Court did not agree with [Plaintiff] . . . it cannot say that the counsel's position was frivolous. Therefore, the defendant's motion for Rule 11 sanctions is denied.").  Here, the Order to Show Cause is not based on any evidence but rather pure speculation which is false as a matter of fact.

### F.   Sanctioning Plaintiff Would Chill Legitimate Advocacy

"Rule 11 should be applied with some caution, given its potential for chilling legitimate advocacy." *Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 519 (N.D. Ill. 1985).  "In exercising its discretion, a district court must also bear in mind that such sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel.'" *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).  "This Court recognized that the sanctuary given as a result of reasonable investigation 'ensures that counsel may take novel innovative positions' and that Rule 11 'does not jeopardize aggressive advocacy or legal evolution.'" *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).

Sanctioning Plaintiff would chill legitimate advocacy by deterring Plaintiff and other copyright holders from bringing claims for copyright infringement on the Internet. Plaintiff has developed a novel, innovative and well-reasoned approach to make its cases stronger. Sanctioning Plaintiff will force copyright holders to rely on less evidence, exposing themselves to significant attorney's fees under the Copyright Act if it cannot prove the defendant committed the infringement. This could potentially allow scores of guilty defendants to avoid liability for copyright infringement. Copyright holders are attempting to compete with constant evolving technology in order to stay in business. By sanctioning Plaintiff, this Court will dissuade copyright holders from embracing their own technology and evidence to fight back against the infringers who willfully steal their content.

### G.   Previous Judicial Approval of Exhibit C Weighs Heavily Against a Finding that Plaintiff Filed It for An Improper Purpose

"A district court abuses its discretion in imposing Rule 11 sanctions when it bases its decision 'on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 448 (7th Cir. 1993). "Sanctions should be reserved for those cases where it is patently clear that a claim has absolutely no chance of success and all doubts should be resolved in favor of the signing party". *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 475 F. Supp. 2d 213, 235 (E.D.N.Y. 2007). "Rule 11 does not and should not inhibit counsel from making a good faith argument under existing precedent." *Reinhardt v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 636 F. Supp. 864, 868 (E.D. Mich. 1986).

Importantly, Rule 11 sanctions should not be implemented when other district courts have permitted the conduct in question. *See Andrews v. Elec. Motor Sys., Inc.*, 767 F. Supp. 853, 856 (S.D. Ohio 1991) (Rule 11 sanctions were not applicable with respect to the attempt of

third-party defendant to remove case to federal court; there was authority permitting such removal in other federal circuits). In this case, as discussed above, Judge Baylson of the Eastern District of Pennsylvania expressly approved of Plaintiff's use of its Cross Reference as an Exhibit to a Complaint. *See Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013). Judge Wright, of the Central District of California opined that *without* an Exhibit like Plaintiff's cross reference, Plaintiff may violate Rule 11(b)(3). Plaintiff should not be sanctioned for conduct that has been approved by other Federal Courts when there is no contrary Circuit Court precedent. Indeed, not one court in the Seventh Circuit, nor anywhere in the country, has found Plaintiff's Exhibit C to be improper.

**H.     The Court Has the Option to *Sua Sponte* Strike Offensive Cross Reference Hits Under Fed. R. Civ. P. 12(f)**

Rule 11 sanctions are particularly inappropriate because Plaintiff has a valid claim, was acting in good faith, and this Court may strike scandalous matter from Exhibit C *sua sponte*. "The Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party[.]" Fed. R. Civ. P. 12(f). Exhibit C is a part of Plaintiff's complaints, and, because it is part of a pleading, the Court may properly strike scandalous matter from the exhibits under Rule 12(f). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice. The decision whether to strike material as scandalous is within the discretion of the district court." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (citations omitted).

If Plaintiff attempted to edit Exhibit C it would inevitably be subjected to harsh scrutiny from both judges and defendants. An onslaught of criticism would surely follow any such

decision suggesting that this or that file should have also been deleted.  Judicial conduct under Rule 12(f) will not invoke such criticism.    Moreover, leaving Exhibit C unaltered presents the Court with an unadulterated list of infringements traced to a particular IP address.  The exhibit speaks for itself without being filtered through Plaintiff's lens.  And, Plaintiff's decision to leave Exhibit C unedited is more than reasonable.

## V.    **CONCLUSION**

As set forth above, Plaintiff has a proper purpose for attaching Exhibit C.  Accordingly, this Court should not sanction Plaintiff under Fed. R. Civ. P. 11.

Dated:  June 26, 2013

Respectfully submitted,

SCHULZ LAW, P.C.

By:    /s/ *Mary K. Schulz* _____
Mary K. Schulz, Esq.
1144 E. State Street, Suite A260
Geneva, Il 60134
Tel:   (224) 535-9510
Fax:  (224) 535-9501
Email:  schulzlaw@me.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    /s/ *Mary K. Schulz* _____

37