| 106TH CONGRESS<br>1st Session | HOUSE OF REPRESENTATIVES | REPORT<br>106–216 |
|---|---|---|

# COPYRIGHT DAMAGES IMPROVEMENT ACT OF 1999

---

JULY 1, 1999.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

Mr. COBLE, from the Committee on the Judiciary, submitted the following

## R E P O R T

[To accompany H.R. 1761]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1761) to amend provisions of title 17, United States Code, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

TABLE OF CONTENTS

|  | Page |
|---|---|
| The Amendment | 1 |
| Purpose and Summary | 2 |
| Background and Need for the Legislation | 2 |
| Hearings | 4 |
| Committee Consideration | 4 |
| Committee on Government Reform Findings | 5 |
| New Budget Authority and Tax Expenditures | 5 |
| Congressional Budget Office Cost Estimate | 5 |
| Constitutional Authority Statement | 6 |
| Section-by-Section Analysis | 6 |
| Changes in Existing Law Made by the Bill, as Reported | 9 |

The amendment is as follows:
Strike out all after the enacting clause and insert in lieu thereof the following:

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Copyright Damages Improvement Act of 1999".

2

**SEC. 2. STATUTORY DAMAGES ENHANCEMENT.**

  Section 504(c) of title 17, United States Code, is amended—
    (1) in paragraph (1)—
      (A) by striking "$500" and inserting "$750"; and
      (B) by striking "$20,000" and inserting "$30,000"; and
    (2) in paragraph (2)—
      (A) by inserting "(A)" after "(2)";
      (B) by striking "$100,000" and inserting "$300,000";
      (C) by inserting after the second sentence the following:
  "(B) In a case where the copyright owner demonstrates that the infringement was part of a repeated pattern or practice of infringement, the court may increase the award of statutory damages to a sum of not more than $250,000 per work."; and
      (D) by striking "The court shall remit statutory damages" and inserting the following:
  "(C) The court shall remit statutory damages".

**SEC. 3. SENTENCING COMMISSION GUIDELINES.**

  Section 2(g) of the No Electronic Theft (NET) Act (28 U.S.C. 994 note) is amended by striking paragraph (2) and inserting the following:
  "(2) In implementing paragraph (1), the Sentencing Commission shall amend the guideline applicable to criminal infringement of a copyright or trademark to provide an enhancement based upon the retail price of the legitimate items that are infringed upon and the quantity of the infringing items. To the extent the conduct involves a violation of section 2319A of title 18, United States Code, the enhancement shall be based upon the retail price of the infringing items and the quantity of the infringing items.
  "(3) Paragraph (1) shall be implemented not later than 3 months after the later of—
    "(A) the first day occurring after May 20, 1999, or
    "(B) the first day after the date of the enactment of this paragraph,
on which sufficient members of the Sentencing Commission have been confirmed to constitute a quorum.
  "(4) The Commission shall promulgate the guidelines or amendments provided for under this section in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that Act had not expired.".

PURPOSE AND SUMMARY

  The purpose of H.R. 1761 is to provide more stringent deterrents to copyright infringement and stronger enforcement of the laws enacted to protect intellectual property rights. H.R. 1761 accomplishes this by increasing the statutory penalties in the Copyright Act for copyright infringement, creating a new statutory penalty for situations where infringement is part of a "repeated pattern or practice" of infringement, and clarifying Congress' intent that the United States Sentencing Commission ensure that the sentencing guideline for intellectual property offenses provide for consideration of the retail price of the legitimate infringed-upon item and the quantity of infringing items in order to make the guideline sufficiently stringent to deter such crime.

BACKGROUND AND NEED FOR THE LEGISLATION

  Section 106 of the Copyright Act (Title 17 of the U.S. Code) gives the owner of a copyright the " . . . exclusive rights . . . to reproduce . . . [and] distribute copies of . . . the copyrighted work. . . . " An individual who violates any of these exclusive rights is an infringer, and may be subject to civil and criminal penalties set forth in Chapter 5 of the Act and section 2319 of Title 18.

3

Notwithstanding these penalties, copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies. For example, industry groups estimate that counterfeiting and piracy of computer software cost the affected copyright holders more than $11 billion last year (others believe the figure is closer to $20 billion). In some countries, software piracy rates are as high as 97% of all sales. The U.S. rate is far lower (25%), but the dollar losses ($2.9 billion) are the highest worldwide. The effect of this volume of theft is substantial: lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers of copyrighted software.

Unfortunately, the potential for this problem to worsen is great. By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies. As long as the relevant technology evolves in this way, more piracy will ensue. Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

Notwithstanding the statutory penalties for copyright infringement, enforcement of those penalties has been minimal. During the first session of the 105th Congress, H.R. 2265, the "No Electronic Theft Act" (NET Act) was enacted into law.[1] The NET Act reversed the practical consequences of *United States* v. *LaMacchia*, 871 F. Supp. 535 (D. Mass. 1994), by criminalizing computer theft of copyrighted works, whether or not the defendant derives a direct financial benefit from the act(s) of misappropriation. However, since the enactment of the NET Act in December 1997, there have been no prosecutions brought by the Department of Justice under the Act. This is important because in order to be successful in the battle against Internet piracy not only must Congress enact legislation giving legal recourse to copyright owners but those laws must be implemented by the appropriate law enforcement agencies.

In May 1999, during hearings on enforcement of the NET Act, representatives of the Department of Justice and the copyright industries testified that the current sentencing guideline—because it is based solely on the value of the infringing items—significantly underrepresents the degree of economic harm inflicted by copyright and trademark crimes.

Sentences for the offenses of criminal copyright infringement and trademark counterfeiting are governed by a sentencing guideline

---

[1] Pub. L. No. 105–47 (December 16, 1997.)

4

designated as § 2B5.3 of the United States Sentencing Commission Guidelines Manual. This guideline sets a Base Offense Level of 6, the same as for fraud or theft offenses involving a loss between $1,000 and $2,000. The guideline also establishes, as the sole aggravating "Specific Offense Characteristic," that if "the retail value of the infringing items exceeded $2,000," then the base level is to be increased by the corresponding number of levels from the monetary loss table in the sentencing guideline for fraud offenses.

The witnesses from the Department of Justice and the copyright industries testified that the sentences imposed under this guideline are too low to deter individuals from trademark counterfeiting and copyright piracy; indeed, according to the Sentencing Commission, approximately 45 percent of intellectual property offenders receive a sentence of probation without any requirement of confinement. Department of Justice officials reported that these low sentences operate as a disincentive for the federal government to commit resources to investigating and prosecuting intellectual property cases, and that few prosecutions and low sentences for those cases that are prosecuted have contributed to the perception of intellectual property crime as a high profit, low risk venture.

In a further attempt to resolve this problem, H.R. 1761 clarifies how Congress intends for the Sentencing Commission to implement the NET Act to provide sufficiently stringent sentencing guidelines to deter intellectual property crime. It is vital that the United States recognizes intellectual property rights and provides strong protection and enforcement against violations of those rights. Federal law enforcement must be armed with effective tools with which to combat this problem. By doing that, the United States will protect its valuable intellectual property and encourage other countries to enact and enforce strong copyright protection laws.

## HEARINGS

The Committee's Subcommittee on Courts and Intellectual Property held a hearing on H.R. 1761 on May 12, 1999. Testimony was received from Kevin V. DiGregory, Deputy Assistant Attorney General, Computer Crimes Division, U.S. Department of Justice; Timothy B. McGrath, Interim Staff Director, U.S. Sentencing Commission; Batur Oktay, Corporate Counsel, Adobe Systems, Inc., on behalf of the Business Software Alliance (BSA); Tim Starback, Emigre, Inc., on behalf of the Software and Information Industry Association (SIIA); and Tod Cohen, Vice President and Counsel, New Technology, Motion Picture Association of America (MPAA).

## COMMITTEE CONSIDERATION

On May 20, 1999, the Subcommittee on Courts and Intellectual Property met in open session and ordered favorably reported the bill H.R. 1761, as amended, by a voice vote, a quorum being present. On May 26, 1999, the Committee met in open session and ordered favorably reported the bill H.R. 1761 with an amendment in the nature of a substitute by voice vote, a quorum being present.

5

### COMMITTEE ON GOVERNMENT REFORM FINDINGS

No findings or recommendations of the Committee on Government Reform were received as referred to in clause 3(c)(4) of Rule XIII of the Rules of the House of Representatives.

### NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 3(c)(2) of House Rule XIII is inapplicable because this legislation does not provide new budget authority or increased tax expenditures.

### CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

In compliance with clause 3(c)(3) of Rule XIII of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 1761, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, June 7, 1999.*

Hon. HENRY J. HYDE,
*Chairman, Committee on the Judiciary,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 1761, the Copyright Damages Improvement Act of 1999.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mark Hadley, who can be reached at 226–2860.

Sincerely,

DAN L. CRIPPEN, *Director.*

*H.R. 1761—Copyright Damages Improvement Act of 1999.*

CBO estimates that enacting this bill would have no significant impact on the federal budget. H.R. 1761 would not affect direct spending or receipts; therefore, pay-as-you-go procedures would not apply. The bill contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would not affect the budgets of state, local, or tribal governments.

Under current law, a copyright owner may choose to recover statutory damages for infringement rather than actual damages and lost profits. H.R. 1761 would increase statutory damages and establish new damages for cases in which the copyright owner demonstrates that the infringement was part of a repeated pattern or practice of infringement. Damages for copyright infringement are paid by one private party to another and thus do not affect the federal budget.

Under the No Electronic Theft Act (Public Law 105–147), when the United States Sentencing Commission establishes sentencing guidelines for cases of copyright infringement, the commission must consider the retail value and the quantity of the items. H.R. 1761 would clarify that in most cases the commission must consider the retail value of the legitimate items rather than the value

6

of the infringing items. If the commission elects to enhance prison sentences for copyright infringement, federal costs would rise, subject to the availability of appropriations, to accommodate more prisoners. CBO expects that any increase in discretionary spending over the next five years is likely to be very small.

The CBO staff contact is Mark Hadley, who can be reached at 226–2860. This estimate was approved by Paul N. Van de Water, Assistant Director for Budget Analysis.

CONSTITUTIONAL AUTHORITY STATEMENT

Pursuant to clause 3(d)(1) of the Rule XIII of the Rules of the House of Representatives, the Committee finds the authority for this legislation in Article I, section 8, clause 8 of the Constitution.

SECTION-BY-SECTION ANALYSIS

*Sec. 1. Short Title.*

This section states that H.R. 1761 may be cited as the "Copyright Damages Improvement Act of 1999".

*Sec. 2. Statutory Damages Enhancement.*

Section 2 makes a number of changes to existing statutory damage awards in section 504 of title 17, United States Code. The general purpose of the amendments is to strengthen the deterrent effect of statutory damages on copyright infringement. Copyrighted works are some of the United States' most valuable products. In a world of increasing global utilization and distribution of intellectual property, the United States must take the lead in establishing a legal regime that provides sufficient protection for copyrighted works and encourages other countries to follow suit. Current statutory damage levels were last adjusted in 1988 and do not take into account inflation in the intervening years, increased utilization of certain types of intellectual property, or current trends in global distribution and electronic commerce. Courts and juries must be able to render awards that deter others from infringing intellectual property rights. It is important that the cost of infringement substantially exceed the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws.

The section makes a number of changes to section 504 of title 17, United States Code. First, section 504(c)(1) is amended to adjust the minimum statutory damage amount for "non-willful" infringement from $500 to $750. This change adjusts the minimum amount upward to reflect inflation over the past eleven years and to otherwise preserve the deterrent effect of the statutory damage penalties.

Second, section 504(c)(1) is amended to adjust the maximum statutory damage amount for "non-willful" infringement from $20,000 to $30,000. This change as well adjusts the maximum amount upward to reflect inflation over the past eleven years and to otherwise preserve the deterrent effect of the statutory damage penalties.

Third, section 504(c)(2) is amended by redesignating the first two sentences as subparagraph "(A)" and by increasing the maximum

7

damage amount for willful infringement from $100,000 to $300,000. This substantial increase reflects not only intervening inflation but also the determination that increased global utilization and distribution of intellectual property and electronic commerce warrant enhanced deterrence in order to prevent copyright infringement. This higher damage amount is fully consistent with other intellectual property precedents. For example, maximum copyright statutory damages for certain violations of the "satellite compulsory license" are $250,000,[2] and the maximum penalty for willful infringement of a trademark is $1 million.[3] It should be noted that the minimum damage amount for a person or entity that shows that it was an "innocent infringer" has not been changed. Thus, in a case where the infringer sustains the burden of proving, and the court finds that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may continue to reduce the award of statutory damages to a sum of not less than $200.

Fourth, a new subparagraph (B) is added to section 504(c)(2) establishing a maximum statutory damage amount of $250,000 for situations where the infringement was part of a "repeated pattern or practice" of infringement. This provision conforms the statutory damage categories available for infringement of all rights protected by the Copyright Act to the "pattern or practice" infringement damages of up to $250,000 for violations of the public performance right in the context of the section 119 "satellite compulsory license."

In creating a new category of statutory damages for "repeated pattern or practice" infringement, the Committee is acting to address situations in which the infringing activity constitutes a course of conduct, not an isolated occurrence. A repeated pattern or practice of infringement is inherently more harmful to the rights of copyright holders and to the interests the copyright laws are designed to protect. Such a pattern or practice should therefore subject the infringer to a higher range of statutory damages than in the case of a single act of infringement. In some instances, persons who are determined to infringe are insufficiently deterred by a first brush with the copyright laws to cease their infringing activity. In other cases, persons engage in infringing activity over a period of time without being detected by the copyright owner. It is intended that these higher damage awards be made available in these and other circumstances where an infringer's activities arise to a "pattern or practice," in order to bring greater deterrence to bear and to promote respect for the law and for the rights of creators and copyright owners.

Finally, a technical and conforming amendment is made to section 504(c)(2) by establishing a new subparagraph (C).

*Sec. 3. Sentencing Commission Guidelines.*

Section 3 amends section 2(g)(2) of the "No Electronic Theft Act" (NET Act), Pub. L. No. 105–147 (December 16, 1997). Section 2(g)(1) is a Directive to the Sentencing Commission. The Directive instructs the Commission to ensure that the applicable guideline

---

[2] 17 U.S.C. § 119(a)(5)(B).
[3] 15 U.S.C. § 1117(c)(2).

8

range for intellectual property crimes be sufficiently stringent to deter such crimes. Section (2)(g)(2) instructs the Commission that in implementing paragraph (g)(1), the Commission must ensure that the guidelines provide for consideration of the retail value and quantity of the items with respect to which the crime against intellectual property was committed. Section 3 of H.R. 1761 amends paragraph (g)(2) to state: "In implementing paragraph (1), the Sentencing Commission shall amend the guideline applicable to criminal infringement of a copyright or trademark to provide an enhancement based upon the retail price of the legitimate items that are infringed upon and the quantity of the infringing items. To the extent the conduct involves a violation of section 2319A of title 18, United States Code, the enhancement shall be based upon the retail price of the infringing items."

H.R. 1761 makes no changes in paragraph (g)(1) of the NET Act Directive. The Committee's clear intent is that sentences for intellectual property crimes should be increased significantly from their present level. The amendment to paragraph (g)(2) reinforces the Committee's intent that the current guideline, with its reliance only on the value of the infringing item, should be replaced with a guideline based on the retail price of the infringed upon (legitimate) items and the quantity of the infringing items in cases arising under 18 U.S.C. 2318, 2319, and 2320.[4] The Committee believes that the retail price of the legitimate items that are infringed upon (multiplied by the quantity of the infringing items) is a more accurate measure of the economic harm caused by these offenses than the measure used by the current guideline.

There may be cases in which multiplying the retail price of the legitimate item by the quantity of infringing items may overstate the economic harm. For example, a defendant selling a counterfeit watch on a street corner for a small fraction of its normal selling price may not warrant a sentence based purely on multiplying the number of sales by the retail price of the legitimate watch. This Directive is not intended to preclude the Commission from developing a guideline that permits reasonable adjustments to the monetary calculation in this type of case, or that provides other appropriate adjustments, aggravating or mitigating, to sufficiently deter copyright and trademark offenses and to meet the other purposes of sentencing as set forth in section 3553(a) of title 18, United States Code.[5] This does not change the fact that the Commission must abide by the Directive, and adopt a guideline that, overall, has the effect of increasing the sentences for violations of intellectual property crimes, whether involving copyrights or trademarks.

Section 3 of H.R. 1761 also grants the Commission emergency amendment authority necessary to amend guideline §2B5.3, regardless of established amendment cycles. Section 3 also imposes a deadline on the Commission to implement paragraph (2)(g) of

---

[4] In §2319A cases, the enhancement must be based on the retail value of the infringing item because there is no commercially-available, genuine counterpart for the types of unauthorized recordings of live musical performances which this section prohibits. If the criminal conduct did not occur for commercial purpose or private financial gain, the "retail price" should be determined from the price of comparable items.

[5] The Committee amended H.R. 1761 to take a broader approach than the version of the bill reported by the Subcommittee on Courts and Intellectual Property, which directed the Commission to use "the retail price of the infringed-upon goods and quantity of the items as the *exclusive* basis for determining the total retail value of those items." (Emphasis added).

"not later than 3 months after the later of (A) the first day occurring after May 20, 1999, or (B) the first day after the date of the enactment of this paragraph, on which sufficient members of the Sentencing Commission have been confirmed to constitute a quorum." The Committee believes that expeditious action is necessary given the magnitude of the growing problem of crimes against intellectual property.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed is shown in roman):

**SECTION 504 OF TITLE 17, UNITED STATES CODE**

**§ 504. Remedies for infringement: Damages and profits**

(a) * * *

\* \* \* \* \* \* \*

(c) STATUTORY DAMAGES.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than [$500] *$750* or more than [$20,000] *$30,000* as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2)*(A)* In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than [$100,000] *$300,000*. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. *(B) In a case where the copyright owner demonstrates that the infringement was part of a repeated pattern or practice of infringement, the court may increase the award of statutory damages to a sum of not more than $250,000 per work.* [The court shall remit statutory damages] *(C) The court shall remit statutory damages* in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such

institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in subsection (g) of section 118) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

———

## SECTION 2 OF THE NO ELECTRONIC THEFT ACT

**SEC. 2. CRIMINAL INFRINGEMENT OF COPYRIGHTS.**
   (a)  \* \* \*

         \*       \*       \*       \*       \*       \*       \*
   (g) DIRECTIVE TO SENTENCING COMMISSION.—(1)  \* \* \*
   〖(2) In implementing paragraph (1), the Sentencing Commission shall ensure that the guidelines provide for consideration of the retail value and quantity of the items with respect to which the crime against intellectual property was committed.〗
   *(2) In implementing paragraph (1), the Sentencing Commission shall amend the guideline applicable to criminal infringement of a copyright or trademark to provide an enhancement based upon the retail price of the legitimate items that are infringed upon and the quantity of the infringing items. To the extent the conduct involves a violation of section 2319A of title 18, United States Code, the enhancement shall be based upon the retail price of the infringing items and the quantity of the infringing items.*
   *(3) Paragraph (1) shall be implemented not later than 3 months after the later of—*
      *(A) the first day occurring after May 20, 1999, or*
      *(B) the first day after the date of the enactment of this paragraph,*
*on which sufficient members of the Sentencing Commission have been confirmed to constitute a quorum.*
   *(4) The Commission shall promulgate the guidelines or amendments provided for under this section in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that Act had not expired.*

○